# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## NOTICE OF ENTRY OF
## JUDGMENT ACCOMPANIED BY OPINION

OPINION FILED AND JUDGMENT ENTERED: 09/17/2015

The attached opinion announcing the judgment of the court in your case was filed and judgment was entered on the date indicated above. The mandate will be issued in due course.

Information is also provided about petitions for rehearing and suggestions for rehearing en banc. The questions and answers are those frequently asked and answered by the Clerk's Office.

Costs are taxed against the appellant in favor of the appellee under Rule 39. The party entitled to costs is provided a bill of costs form and an instruction sheet with this notice.

The parties are encouraged to stipulate to the costs. A bill of costs will be presumed correct in the absence of a timely filed objection.

Costs are payable to the party awarded costs. If costs are awarded to the government, they should be paid to the Treasurer of the United States. Where costs are awarded against the government, payment should be made to the person(s) designated under the governing statutes, the court's orders, and the parties' written settlement agreements. In cases between private parties, payment should be made to counsel for the party awarded costs or, if the party is not represented by counsel, to the party pro se. Payment of costs should not be sent to the court. Costs should be paid promptly.

If the court also imposed monetary sanctions, they are payable to the opposing party unless the court's opinion provides otherwise. Sanctions should be paid in the same way as costs.

Regarding exhibits and visual aids: Your attention is directed Fed. R. App. P. 34(g) which states that the clerk may destroy or dispose of the exhibits if counsel does not reclaim them within a reasonable time after the clerk gives notice to remove them. (The clerk deems a reasonable time to be 15 days from the date the final mandate is issued.)

FOR THE COURT

/s/ Daniel E. O'Toole

Daniel E. O'Toole
Clerk of Court

cc: Stephen Butler Sr.
Megan Dortenzo
Jonathan S. Franklin
Sheila C. Kadura
Arthur P. Licygiewicz
Philip B. Sineneng
J. Derek Vandenburgh
Anthony C. White
Douglas J. Williams
Richard Stephen Zembek

14-1718 - R+L Carriers, Inc. v. Qualcomm, Inc.
United States District Court for the Southern District of Ohio, Case No. 1:09-cv-00445-SSB

# United States Court of Appeals for the Federal Circuit

---

**R+L CARRIERS, INC.,**
*Plaintiff-Appellant*

v.

**QUALCOMM, INC.,**
*Defendant-Appellee*

---

2014-1718

---

Appeal from the United States District Court for the Southern District of Ohio in No. 1:09-cv-00445-SSB, Senior Judge Sandra S. Beckwith.

---

Decided: September 17, 2015

---

ANTHONY C. WHITE, Thompson Hine LLP, Columbus, OH, and MEGAN DORTENZO, Cleveland, OH, argued for plaintiff-appellant. Also represented by ARTHUR P. LICYGIEWICZ, Cleveland, OH; PHILIP B. SINENENG, Columbus, OH; STEPHEN BUTLER, SR., Cincinnati, OH.

J. DEREK VANDENBURGH, Carlson, Caspers, Vandenburgh, Lindquist & Schuman, P.A., Minneapolis, MN, argued for defendant-appellee. Also represented by DOUGLAS J. WILLIAMS; JONATHAN S. FRANKLIN, Norton Rose Fulbright US LLP, Washington, DC; RICHARD

STEPHEN ZEMBEK, Houston, TX; SHEILA C. KADURA, Austin, TX.

Before NEWMAN, O'MALLEY, and WALLACH, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

R+L Carriers, Inc. ("R+L") brought suit against, *inter alia*, Qualcomm, Inc. ("Qualcomm"), asserting infringement of the claims of U.S. Patent No. 6,401,078 ("the '078 patent"). While the case was pending, R+L filed for ex parte reexamination of the '078 patent. Although the patent survived, R+L added language to all of the claims at issue. Because the district court determined that the new claims were not substantially identical to the initial claims of the '078 patent, and because there was no dispute that Qualcomm ceased its allegedly infringing activity before the reexamination certificate issued, R+L stipulated to final judgment, dismissing its infringement claim against Qualcomm. R+L appeals the district court's determination that the amendments made during reexamination resulted in a substantive change in claim scope. For the reasons set forth below, we *affirm*, albeit on slightly different grounds than those relied upon by the district court.

I. BACKGROUND

A. The '078 Patent

The '078 patent generally relates to an improved method of consolidating freight into trailers to optimize delivery efficiencies for the loads in each trailer. According to the '078 patent, prior art shipping practices would evaluate the contents of each incoming trailer by reviewing bills of lading for the packages when they arrived at a central terminal. The patent explains that the freight on each trailer was then consolidated with freight going in

R+L CARRIERS, INC. v. QUALCOMM, INC.                             3

the same direction and hauled away from the central terminal. The patent explains that the purpose of consolidation was to deliver all of the freight on time, while using the fewest number of trailers to do so. Although load planning software at the time could help perform this task more efficiently, the patent asserts that the prior art software could not account for unscheduled freight that was not entered into the computer.

To solve this alleged deficiency in the prior art, the '078 patent discloses a system for transmitting the contents of a trailer to the central terminal so that load planning can occur while the trailer is en route. The system contemplates the scanning of bills of lading, transmitting those documents once scanned, and receiving the data where it can be extracted for load planning and billing purposes. The patent appears to describe two alternative methods for extracting the load planning information from the transmission and preparing loading manifests therefrom: (1) a computerized system automatically interpreting the data; and (2) a data entry clerk manually reviewing the information. The U.S. Patent and Trademark Office ("PTO") initially issued the patent on June 4, 2002, containing only one independent claim ("original claim 1").

On June 28, 2013, R+L filed for ex parte reexamination of the '078 patent based on prior art identified by a third party. In the first office action, the PTO rejected original claim 1, *inter alia*, as anticipated by a key prior art reference—a publication from the N&M Transfer Company that "teaches a method for transferring shipping documentation data for a package from a transporting vehicle to a remote processing center." Joint Appendix ("J.A.") 2925. To overcome the PTO's rejection, R+L modified original claim 1 as follows:

> 1. A method for transferring shipping documentation data for a package from a transporting vehi-

cle to a remote processing center *comprising the steps of*:

placing a package on the transporting vehicle;

using a portable document scanner to scan an image of the documentation data for the package, said image including shipping details of the package;

providing a portable image processor capable of wirelessly transferring the image from the transporting vehicle;

wirelessly sending the image to a remote processing center;

receiving the image at said remote processing center; and

prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare [a] *an advance* loading manifest *document for another transporting vehicle* which includes said package for further transport of the package on another transporting vehicle.

'078 Patent Reexamination Certificate col. 2 ll. 1–18 (deletion in brackets; additions in italics) ("amended claim 1").  In allowing amended claim 1, the PTO explained that the key prior art reference only discussed loading a "manifest for the *current* shipping vehicle and not an advance loading manifest document for *another* transporting vehicle." J.A. 3088.  The PTO issued the reexamination certificate on March 21, 2014, with amended claim 1 replacing original claim 1.

### B.  Procedural History

R+L filed suit against Qualcomm on June 25, 2009, alleging, *inter alia*, induced infringement of the '078

R+L CARRIERS, INC. v. QUALCOMM, INC.                5

patent.  R+L's case against Qualcomm was consolidated into a multidistrict litigation ("MDL") in the United States District Court for the Southern District of Ohio. *In re Bill of Lading Transmissions & Processing Sys. Patent Litig.*, MDL Docket No. 1:09-md-2050 (S.D. Ohio).  In a prior appeal, on June 7, 2012, this court held that R+L's induced infringement claims survived Qualcomm's motion to dismiss. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1346–47 (Fed. Cir. 2012).

We remanded the case against Qualcomm for further proceedings.  After the PTO issued the reexamination certificate on March 21, 2014, the district court *sua sponte* ordered all of the parties in the MDL to brief the effect of the claim amendments made during reexamination.  On May 19, 2014, the district court determined that R+L's amendment to original claim 1 substantively narrowed the claim, thereby precluding recovery of damages for infringement prior to the date the PTO issued the reexamination certificate.  The district court agreed with the accused infringers in the MDL that, although original claim 1 covered both manual and computer-prepared loading manifests, amended claim 1 covered only computer-prepared loading manifests.  The district court reasoned that the specification of the '078 patent disclosed both manual and computerized extraction of information from bills of lading and preparation of loading manifests, the language in original claim 1 did not limit methods for preparing loading manifests to only computerized systems, and the term "advance" in amended claim 1 was added to get around the N&M prior art, which, among other things, disclosed manual entry of the loading manifest.  For these reasons, the district court concluded that amended claim 1 must encompass only the preparation of computer-generated loading manifests.

Because Qualcomm sold its allegedly infringing business unit before the PTO issued the reexamination certifi-

cate for the '078 patent, R+L conceded that it could not recover any damages against Qualcomm based on the district court's determination that claim 1 was substantively narrowed during reexamination. Accordingly, R+L stipulated to entry of final judgment, dismissing its infringement claims against Qualcomm. R+L timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1) (2012).

## II. Discussion

A patentee of a patent that survives reexamination is only entitled to infringement damages for the time period between the date of issuance of the original claims and the date of issuance of the reexamined claims if the original and the reexamined claims are "substantially identical." 35 U.S.C. § 252 (2012) (stating that a reissued patent shall have the same effect as the original patent "in so far as the claims of the original and reissued patents are *substantially identical*" (emphasis added)); *see* 35 U.S.C. § 307(b) (stating that "a reexamination proceeding will have the same effect as that specified in section 252 for reissued patents"); *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998) (citing 35 U.S.C. §§ 252, 307(b)). If, on the other hand, a substantive change has been made to the original claims during reexamination, the patentee is entitled to infringement damages only for the time period following issuance of the reexamination certificate. *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997) ("'Identical' does not mean verbatim, but means at most without *substantive change*." (emphasis added)). To determine whether substantive changes have been made, we consider "whether the *scope* of the claims are identical, not merely whether different words are used." *Laitram*, 163 F.3d at 1346; *Bloom Eng'g*, 129 F.3d at 1250.

We have held previously that we review de novo a district court's conclusion regarding whether the scope of

reexamined claims are "substantively identical" to the scope of the original claims. *Laitram*, 163 F.3d at 1346–47. In *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831 (2015), however, the Supreme Court held that we must review the district court's resolution of subsidiary factual matters during claim construction for clear error. *Id.* at 841–42. Because we are reviewing the scope of the reexamined and original claims, this is a matter of claim construction. *See Laitram*, 163 F.3d at 1346–47 ("This rule flows from the general principle that 'the interpretation and construction of patent claims, which define the scope of the patentee's rights under the patent, is a matter of law, exclusively for the court.'" (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996))). Accordingly, we must review the district court's subsidiary factual findings on the scope of the reexamined and original claims for clear error, but the ultimate conclusion regarding the scope of the claims de novo. *See Teva*, 135 S. Ct. at 841–42.

It is undisputed that R+L cannot recover damages for infringement from Qualcomm unless amended claim 1 is "substantially identical" to original claim 1. 35 U.S.C. § 252. Accordingly, this case turns on our review of the district court's determination that amended claim 1 is substantively narrower than original claim 1. *See Bloom Eng'g*, 129 F.3d at 1250. Qualcomm argues that it is clear that, although original claim 1 encompassed computer *and* manual loading manifests, amended claim 1 is limited to computer-generated loading manifests because, it says, that limitation was necessary to overcome the N&M reference. R+L argues, to the contrary, that it is clear that "loading manifests" in original claim 1 was always limited to computer-generated or computer-assisted documents and that the only amendment necessary to overcome the N&M reference was the clarification that the loading manifest must be a document for another

8                R+L CARRIERS, INC. v. QUALCOMM, INC.

transporting vehicle, rather than the current vehicle. Thus, R+L contends that the narrowing on which the district court relied for its judgment actually never occurred.

As an initial matter, we disagree with *both* Qualcomm and R+L on the primary premises of their arguments. As for Qualcomm, we do not agree that claim 1 was substantively narrowed in reexamination because insertion of the term "advance" into the claims limited claim 1 to only computer-generated loading manifests. Qualcomm reads too much into the term "advance," which, as discussed below, was added to the claim for reasons unrelated to the format for preparing the loading manifests. Speculation about what R+L was attempting to accomplish vis-à-vis the N&M reference does not change our view.

Under the statute and our prior case law, it is irrelevant *why* an amended claim is narrowed during reexamination, or even whether the patentee intended to narrow the claim in a particular way. If the scope of the amended claim is not "substantially identical" to the scope of the original claim—based on a normal claim construction analysis—per § 252, that fact affects intervening rights. *See* 35 U.S.C. § 307(b). The fact that the reason for the amendment during reexamination might not have been for the purpose of narrowing the claim in a particular way does not matter. And, the court is not charged with assessing why a claim might have been narrowed as a predicate to determining whether it has been narrowed. Indeed, we explained in the analogous context of considering whether a claim was *broadened* on reexamination that we consider "whether any conceivable process would infringe the amended claim, but not infringe the original claim." *Predicate Logic, Inc. v. Distributive Software, Inc.*, 544 F.3d 1298, 1303 (Fed. Cir. 2008). Similarly, in determining whether an amended claim is *narrower*, we determine whether there is any product or process that would infringe the original claim, but not infringe the

amended claim. *See id.* The purpose of the amendment is irrelevant to this inquiry. We do not agree, accordingly, that, simply because it may have made sense to narrow claim 1 to exclude manual operations in order to overcome the N&M reference, that form of narrowing necessarily occurred.

Having said that, we do not agree with R+L that "loading manifest" in claim 1 always encompassed only manifests generated using load planning software. We agree with the district court's thorough claim construction analysis of original claim 1 and its conclusion that the term "loading manifest" is broad enough to encompass both manual and computer generated documentation. We find that, under a proper claim construction analysis, both original claim 1 and amended claim 1 are similarly broad in that respect. Whatever R+L's reason for adding the word "advance" into claim 1, the district court's conclusion as to the scope of original claim 1 under traditional claim construction principles is not affected.

That conclusion does not expose Qualcomm to damages for infringement of amended claim 1, however, because we find that claim 1 was narrowed in other ways during reexamination and is, thus, not substantially identical to original claim 1 in the '078 patent. R+L amended "loading manifest" to claim an "*advance* loading manifest *document for another transporting vehicle.*" '078 Patent Reexamination Certificate col. 2 ll. 15–16 (additions in italics). R+L made this amendment after the PTO rejected original claim 1 over various pieces of prior art, not just N&M. The examiner expressly stated he was allowing amended claim 1 because "the manifest discussed by [the prior art] is a manifest for the *current* shipping vehicle and not an advance loading manifest document for *another* transporting vehicle." J.A. 3088. In other words, the examiner's focus in allowing the claims was not on whether a computer produced the loading manifest, but on the additional limitation that the advance loading

manifest be "for *another* transporting vehicle." *Id.* Although the amendment may not have limited amended claim 1 to computer-produced loading manifests, the examiner's commentary reveals a method that would be covered by original claim 1 but not amended claim 1: the process of preparing a loading manifest "for the *current* shipping vehicle." J.A. 3088.

R+L's own argument that "advance" did not alter the scope of the claims as it relates to the method for preparing the manifests further supports this conclusion. In its briefing, R+L acknowledges that the claims were allowed over the prior art because it agreed to add the "for *another* transporting vehicle" limitation. Appellant's Br. 11. As R+L stated in its interview summary during reexamination, addition of "loading manifest document for another transportation vehicle" resulted in a tentative agreement that the amendment would overcome the rejections over the prior art. J.A. 3194–95. Even if the word "advance" was only added to "provide clarity," as R+L argues, R+L clearly understood that it was limiting the scope of its claims in another way to get around the prior art. *See* Appellant's Br. 11; J.A. 3194–95.[1] Thus, amended claim 1 is not "substantially identical" to original claim 1 because original claim 1 encompassed scope that amended claim 1 does not. *See* 35 U.S.C. § 252.

Accordingly, we conclude that amended claim 1 is not "substantially identical" to original claim 1. 35 U.S.C. § 252. R+L is, thus, not entitled to infringement damages prior to issuance of the reexamination certificate for the

---

[1] Notably, R+L itself suggested adding the term "advance" to further emphasize the "for another transporting vehicle limitation." Thus, even if the term "advance" did not alter the method for preparing the loading manifests covered by claim 1, it does appear that the term "advance" assisted in narrowing the claim in other ways.

R+L CARRIERS, INC. v. QUALCOMM, INC.

11

'078 patent.  Since R+L concedes that Qualcomm did not perform any allegedly infringing conduct after the PTO issued the reexamination certificate, the district court properly entered judgment dismissing the case against Qualcomm.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court dismissing R+L's infringement claims against Qualcomm.

**AFFIRMED**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

*Questions and Answers*

**Petitions for Rehearing (Fed. Cir. R. 40)
and
Petitions for Hearing or Rehearing En Banc (Fed. Cir. R. 35)**

---

*Q. When is a petition for rehearing appropriate?*

A. Petitions for rehearing are rarely considered meritorious. Consequently, it is easiest to first answer when a petition for rehearing is not appropriate. A petition for rehearing should not be used to reargue issues already briefed and orally argued. If a party failed to persuade the court on an issue in the first instance, they do not get a second chance. This is especially so when the court has entered a judgment of affirmance without opinion under Fed. Cir. R. 36, as a disposition of this nature is used only when the appellant has utterly failed to raise any issues in the appeal that require an opinion to be written in support of the court's judgment of affirmance.

   Thus, as a usual prerequisite, the court must have filed an opinion in support of its judgment for a petition for rehearing to be appropriate. Counsel seeking rehearing must be able to identify in the court's opinion a material error of fact or law, the correction of which would require a different judgment on appeal.

*Q. When is a petition for hearing or rehearing en banc appropriate?*

A. En banc decisions are extraordinary occurrences. To properly answer the question, one must first understand the responsibility of a three-judge merits panel of the court. The panel is charged with deciding individual appeals according to the law of the circuit as established in the court's precedential opinions. While each merits panel is empowered to enter precedential opinions, the ultimate duty of the court en banc is to set forth the law of the Federal Circuit, which merit panels are obliged to follow.

Thus, as a usual prerequisite, a merits panel of the court must have entered a precedential opinion in support of its judgment for a suggestion for rehearing en banc to be appropriate. In addition, the party seeking rehearing en banc must show that either the merits panel has failed to follow identifiable decisions of the U.S. Supreme Court or Federal Circuit precedential opinions or that the merits panel has followed circuit precedent, which the party seeks to have overruled by the court en banc.

*Q. How frequently are petitions for rehearing granted by merits panels or petitions for rehearing en banc accepted by the court?*

A. The data regarding petitions for rehearing since 1982 shows that merits panels granted some relief in only three percent of the more than 1900 petitions filed. The relief granted usually involved only minor corrections of factual misstatements, rarely resulting in a change of outcome in the decision.

En banc petitions were accepted less frequently, in only 16 of more than 1100 requests. Historically, the court itself initiated en banc review in more than half (21 of 37) of the very few appeals decided en banc since 1982. This sua sponte, en banc review is a by-product of the court's practice of circulating every precedential panel decision to all the judges of the Federal Circuit before it is published. No count is kept of sua sponte, en banc polls that fail to carry enough judges, but one of the reasons that virtually all of the more than 1100 petitions made by the parties since 1982 have been declined is that the court itself has already implicitly approved the precedential opinions before they are filed by the merits panel.

*Q. Is it necessary to have filed either of these petitions before filing a petition for certiorari in the U.S. Supreme Court?*

A. No. All that is needed is a final judgment of the Court of Appeals. As a matter of interest, very few petitions for certiorari from Federal Circuit decisions are granted. Since 1982, the U.S. Supreme Court has granted certiorari in only 31 appeals heard in the Federal Circuit. Almost 1000 petitions for certiorari have been filed in that period.

July 21, 2008

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

INFORMATION SHEET

FILING A PETITION FOR A WRIT OF CERTIORARI

There is no automatic right of appeal to the Supreme Court of the United States from judgments of the Federal Circuit. You must file a petition for a writ of certiorari which the Supreme Court will grant only when there are compelling reasons. (See Rule 10 of the Rules of the Supreme Court of the United States, hereinafter called Rules.)

**Time.** The petition must be filed in the Supreme Court of the United States within 90 days of the entry of judgment in this Court or within 90 days of the denial of a timely petition for rehearing. The judgment is entered on the day the Federal Circuit issues a final decision in your case. [The time does not run from the issuance of the mandate, which has no effect on the right to petition.] (See Rule 13 of the Rules.)

**Fees.** Either the $300 docketing fee or a motion for leave to proceed in forma pauperis with an affidavit in support thereof must accompany the petition. (See Rules 38 and 39.)

**Authorized Filer.** The petition must be filed by a member of the bar of the Supreme Court of the United States or by the petitioner representing himself or herself.

**Format of a Petition.** The Rules are very specific about the order of the required information and should be consulted before you start drafting your petition. (See Rule 14.) Rules 33 and 34 should be consulted regarding type size and font, paper size, paper weight, margins, page limits, cover, etc.

**Number of Copies.** Forty copies of a petition must be filed unless the petitioner is proceeding in forma pauperis, in which case an original and ten copies of the petition for writ of certiorari and of the motion for leave to proceed in forma pauperis. (See Rule 12.)

**Where to File.** You must file your documents at the Supreme Court.

**Clerk**
**Supreme Court of the United States**
**1 First Street, NE**
**Washington, DC 20543**
**(202) 479-3000**

No documents are filed at the Federal Circuit and the Federal Circuit provides no information to the Supreme Court unless the Supreme Court asks for the information.

**Access to the Rules.** The current rules can be found in Title 28 of the United States Code Annotated and other legal publications available in many public libraries.

Revised December 16, 1999